CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge and VIRGINIA C. KELLY, Judge.

270 P.3d 859

**STATE of Arizona, Appellant,**

v.

**Michael Kevin PENNEY, Appellee.**

**No. 1 CA–CR 10–0766.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 31, 2012.

William G. Montgomery, Maricopa County Attorney By Arthur G. Hazelton, Jr., Deputy County Attorney, Phoenix, Attorneys for Appellant.

Debus Kazan & Westerhausen, Ltd. By Tracey Westerhausen, Phoenix, Attorneys for Appellee.

## OPINION

OROZCO, Judge.

¶ 1 The State appeals the trial court's order dismissing with prejudice two counts of aggravated driving under the influence of intoxicating liquor or drugs (DUI), both class four felonies, against Defendant, Michael Kevin Penney. The court found that after Penney told police he wanted to talk to a lawyer, police put him in a room with a telephone and a phonebook, but rejected his subsequent request for help after he discovered that the yellow pages containing attorneys' names and phone numbers had been ripped from the phonebook. For the following reasons, we affirm the trial court's finding that police denied Penney his right to

counsel, but we remand for an evidentiary hearing on the appropriate remedy.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Scottsdale police responded to multiple calls regarding a vehicle that had crashed into a home in the early morning hours of February 20, 2010. By the time police arrived, the driver of the vehicle had fled the scene. However, officers found paperwork in the vehicle that identified Penney as the owner. When officers contacted Penney outside his residence a short while later, he "appeared disheveled." He had cuts on his hands and wrists and bloodshot, watery eyes, and his shirt had "a white slash going from the top left shoulder to the bottom ... consistent with some sort of a friction burn." He smelled of alcohol and slurred his speech. Officers found the keys to the wrecked vehicle in Penney's pocket.

¶ 3 Officer Thomas arrested Penney for DUI at 3:08 a.m. At that time, Officer Thomas advised Penney of the implied consent law [1] and asked him if he would submit to a blood test. Penney said no. At a pretrial hearing, Officer Thomas testified that Penney said nothing after refusing the blood test. Penney, on the other hand, testified that after being read the implied consent law, he asked to speak to an attorney.

¶ 4 After arriving at the police station, Officer Thomas placed Penney in the phone room at 3:38 a.m. so he could "call anybody if [he] would like to get some advice." The phone room contained one set of yellow pages and one set of white pages, and instructions for using the phone system were posted on the walls. Officer Thomas left Penney in the phone room while he prepared a telephonic application for a search warrant and called a phlebotomist.

¶ 5 The court faxed the search warrant to Officer Thomas at 4:25 a.m. Officer Thomas then returned to the phone room and re read the implied consent law to Penney, including the "final admonition," allowing him one last

chance to submit to the blood test voluntarily. Penney again refused. Officer Thomas asked Penney if he had been able to call anyone. Penney's response was that he could not call anyone because all the pages with attorney listings in the yellow pages were torn out. Penney testified that Officer Thomas replied, "That is not my F-in problem." Officer Thomas did not check to see if the attorney pages were actually missing.

¶ 6 Officer Thomas served the search warrant at 5:09 a.m., and Penney's blood sample was drawn. Following the blood draw, Penney was placed in a holding cell until he was moved to an interview room at 6:50 a.m. Penney was then read his *Miranda*[2] rights and answered Officer Thomas's questions because he "felt like [he] had no choice at that point."

¶ 7 Penney was charged with two counts of aggravated DUI. He filed simultaneous motions to dismiss and to suppress his statements on the ground that he was denied his right to counsel. The trial court held an evidentiary hearing and granted the motion to dismiss with prejudice based on its finding that Penney was denied his right to counsel. The State timely appealed. We have jurisdiction pursuant to A.R.S. § 13–4032(1) (2010).

## DISCUSSION

¶ 8 We review orders dismissing criminal charges for an abuse of discretion or application of an incorrect legal interpretation. *State v. Lemming*, 188 Ariz. 459, 460, 937 P.2d 381, 382 (App.1997). The trial court abuses its discretion when "the reasons given by the court for its actions are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

### Right to Counsel

¶ 9 The State argues that the trial court abused its discretion in finding Penney's

---

1. *See* Arizona Revised Statutes (A.R.S.) § 28–1321.A (Supp. 2010) (requiring anyone arrested for DUI to submit to and complete a blood, breath, or urine test for purposes of determining blood alcohol content).

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

right to counsel was denied, because "even though the phonebook had pages torn out, the police did not prevent Defendant from using the phone to contact a lawyer directly or indirectly." The State contends that police must actively interfere with the suspect's efforts to contact an attorney before a violation of the right to counsel occurs. We disagree.

■ ¶ 10 Both the Sixth Amendment to the United States Constitution and Article 2, Section 24, of the Arizona Constitution guarantee a defendant the right to assistance of counsel. Additionally, Arizona Rule of Criminal Procedure 6.1.a provides that the right to be represented by an attorney includes the right to consult with an attorney, in private, "as soon as feasible after a defendant is taken into custody." Under these principles, a DUI suspect's rights are violated if police do not give him a reasonable opportunity to consult with counsel. *State v. Sanders,* 194 Ariz. 156, 158, ¶ 8, 978 P.2d 133, 135 (App. 1998) (right to counsel violated when police refused suspect's request for station's phone number so he could leave a number for his lawyer to call); *Martinez v. Superior Court,* 181 Ariz. 467, 468, 891 P.2d 934, 935 (App. 1994) ("police cannot interfere with [suspect's] reasonable efforts to communicate with an attorney"); *see Bhattacharya v. Commonwealth,* 292 S.W.3d 901, 905 (Ky. App.2009) (police must give DUI suspect "some means of obtaining attorneys' telephone numbers"); *McNaughton v. Comm'r of Pub. Safety,* 536 N.W.2d 912, 914 (Minn. App.1995) (police "'must assist' in the vindication" of a DUI suspect's right to counsel; suspect's rights were abridged when police gave him a list of five preselected lawyers rather than a phone book).

¶ 11 The State relies on a Washington case for its argument that there is no denial of the right to counsel when police provide a defendant with "unrestricted use of a phone." In *City of Seattle v. Carpenito,* 32 Wash.App. 809, 649 P.2d 861 (1982), the defendant claimed he was denied access to counsel because the police failed to provide him with a list of phone numbers for available assigned attorneys. When the defendant requested to speak with an attorney, the police provided

the defendant with a phonebook that included phone numbers for both private attorneys and the public defender, but the defendant refused to use the phone because he said he did not have an attorney to call. *Id.* at 862–63. The defendant did not request a separate list of available attorneys or otherwise ask for assistance. *Id.* at 863. The Washington Court of Appeals found this was not a denial of the right to counsel. It held that providing a suspect with access to a phone and access to a phonebook with attorneys' phone numbers is sufficient. *Id.*

■ ¶ 12 *Carpenito* is not on point. In that case, police provided the suspect with phonebooks that contained attorneys' telephone numbers. By contrast, the trial court found that the phonebooks that Penney was provided did not contain any list of attorneys' phone numbers and attorney listings in the yellow pages had been torn out. "We defer to the trial court's factual findings that are supported by the record and not clearly erroneous." *State v. Rosengren,* 199 Ariz. 112, 116, ¶ 9, 14 P.3d 303, 307 (App.2000).

¶ 13 Moreover, when Penney informed Officer Thomas that the attorney pages had been ripped out, Officer Thomas did nothing to assist him. Police may not prevent a suspect's access to an attorney unless allowing access would unduly delay the DUI investigation. *Martinez,* 181 Ariz. at 468, 891 P.2d at 935; *see Kunzler v. Pima Cnty. Superior Court,* 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987) ("It is only when the exercise of [the right to counsel] will hinder an ongoing investigation that the right to an attorney must give way in time and place to the investigation by the police."). When police refuse a DUI suspect's right to counsel, the State has the burden of proving that allowing the suspect to confer with counsel when requested would have impeded the investigation. *State v. Rumsey,* 225 Ariz. 374, 377, ¶ 8, 238 P.3d 642, 645 (App.2010). There is no indication that responding to Penney's request for yellow pages listing attorneys would have interfered with the police investigation. The search warrant was signed and returned to Officer Thomas at 4:25 a.m., but the blood draw did not occur until 5:09 a.m. Then, Penney was placed in a holding cell

until 6:50 a.m. The trial court concluded that Officer Thomas could have "taken a minute or two" to at least verify whether the attorney pages had been removed or given Penney another phonebook. Because he did neither, the trial court found that Penney's right to counsel had been denied. This was not an abuse of discretion.

¶ 14 The State also contends that Penney could have used the white pages to contact an attorney or could have called a family member who could have put him in contact with an attorney. Penney argues that he did not have a meaningful opportunity to consult an attorney because he did not know the names of any attorneys. Police must afford a DUI suspect a reasonable opportunity to consult an attorney. *Sanders*, 194 Ariz. at 158, ¶ 8, 978 P.2d at 135. Penney could not have reasonably been expected to locate an attorney using the white pages if he did not know of a specific attorney to call. Furthermore, Penney testified that it did not occur to him to call family members or friends because he was only trying to reach an attorney.

¶ 15 When a DUI suspect invokes his right to counsel, police must provide the suspect with reasonable means of contacting a lawyer. Under circumstances such as those here, when a suspect informs police he requires assistance in contacting a lawyer, the police must take reasonable steps to provide that assistance. In this case, the court found that Penney told the officer that the phonebook the officer gave him lacked attorney listings. Under the circumstances, police were required to respond reasonably—by providing Penney with another phonebook that contained attorney listings or in some other appropriate fashion. What officers did in this case was tantamount to providing no means to contact counsel at all. Thus, the trial court did not err in finding that Officer Thomas did not provide Penney with a reasonable opportunity to contact an attorney.

**Remedy**

¶ 16 Alternatively, the State argues that even if there was a denial of the right to counsel, Penney's ability to gather exculpatory evidence was not hampered, and therefore suppression of the blood test results, not dismissal with prejudice, is the proper remedy.

¶ 17 Dismissal of the case with prejudice is the appropriate remedy when police conduct interferes with both the right to counsel and the ability to obtain exculpatory evidence. *State v. Keyonnie*, 181 Ariz. 485, 487, 892 P.2d 205, 207 (App.1995). Correspondingly, suppression is the appropriate remedy when police interference with the right to counsel does not hamper the defendant's ability to gather exculpatory evidence. *Id.* Courts narrowly tailor remedies for a violation of the right to counsel to avoid unnecessarily infringing on "society's interest in the administration of criminal justice." *State v. Pecard*, 196 Ariz. 371, 379, ¶ 38, 998 P.2d 453, 461 (App.1999) (quoting *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)).

¶ 18 In *Pecard*, this court adopted the United States Supreme Court's approach in *Morrison* in determining a remedy for a violation of a suspect's right to counsel:

> Our approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial. The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.

> More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate.

*Id.* (quoting *Morrison*, 449 U.S. at 365, 101 S.Ct. 665).

¶ 19 Here, no evidence was presented pertaining to the prejudice or threat of prejudice caused by Officer Thomas's violation of

Penney's right to counsel. The trial court dismissed the case without making findings on what exculpatory evidence Penney might have obtained absent the violation and how the violation might have prejudiced the defense. Therefore, the record is insufficient for us to determine whether the trial court abused its discretion by dismissing the charges with prejudice. We remand this matter to the trial court to address this issue. *See Pecard,* 196 Ariz. at 381, ¶ 49, 998 P.2d at 463 (remanding for consideration of additional evidence of prejudice).

## CONCLUSION

¶ 20 For the foregoing reasons, we affirm the trial court's finding of a violation of the right to counsel. We remand so that the trial court may determine whether the violation prejudiced Penney's right to a fair trial by impeding his ability to gather exculpatory evidence.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and PETER B. SWANN, Judge.