IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT NIXON, *Appellant.*

No. 1 CA-CR 16-0391
FILED 4-6-2017

Appeal from the Superior Court in Maricopa County
No.  CR0000-164012-A
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Jeffrey R. Duvendack, Gerald R. Grant
*Counsel for Appellee*

Carm R. Moehle, P.C., Phoenix
By Carm R. Moehle
*Counsel for Appellant*

**OPINION**

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

**H O W E**, Judge:

¶1        Robert Nixon appeals the trial court's order denying his request to restore his gun rights. He argues that the statute suspending his gun rights, A.R.S. § 13–904(A)(5)—enacted in 1994—cannot be applied to him because the law at the time his civil rights were suspended in 1987 upon his felony conviction did not deprive him of his gun rights. He contends that A.R.S. § 13–904(A)(5) cannot retroactively apply to him. We reject this argument and affirm the trial court's ruling. Applying the statute to a person convicted of a felony before 1994 does not constitute retroactive application because the statute merely relates to circumstances at the time the statute was enacted—the person's status as a convicted felon—and does not attach new legal consequences to a pre-1994 conviction.

## FACTS AND PROCEDURAL HISTORY

¶2        In 1987, Nixon pled guilty to attempted child molestation for an incident that occurred with a child under 15 years old. The trial court sentenced him to 15 years' probation. At the time of Nixon's conviction, a felony conviction suspended a person's right to vote, right to hold public office, right to serve as a juror, and any other rights reasonably necessary for security during the time of imprisonment. A.R.S. § 13–904(A)(1)–(4). In 1994, the Arizona Legislature amended A.R.S. § 13–904 to include suspension of a person's right to possess a gun or firearm. *See* 1994 Ariz. Sess. Laws, ch. 200, § 5; *see also* A.R.S. § 13–904(A)(5). For a first-time felony offender, civil rights are automatically restored upon the completion of probation, except the right to possess a gun or firearm, which can be restored only by application to the court. A.R.S. § 13–912(A)–(B).

¶3        Nixon completed probation in 2002. Although Nixon was not required to ask a court to restore his civil rights, he nevertheless filed a motion seeking restoration of his civil rights in 2007. In that motion, he asked that his gun rights be restored as well. The trial court denied the request, noting the seriousness of the offense and the victim's age. In 2016, Nixon renewed his request, arguing that because he was a first-time felony offender his civil rights were automatically restored when he completed probation. And just as he did in his 2007 request for restoration of his civil rights, he also requested to have his gun rights restored. The trial court granted the automatic restoration of Nixon's civil rights but denied the restoration of his gun rights.

¶4        In denying Nixon's request to restore his gun rights, the trial court determined that its decision was discretionary. The court's ruling

noted the victim's age and Nixon's conviction as reasons for denying the restoration. The trial court also referenced "*Cf.* 13–907(e)(4)," which is the statute that involves setting aside judgments of guilt. The specific subsection cited states that convictions like Nixon's cannot be set aside. Nixon timely appealed.

## DISCUSSION

### 1. A.R.S. § 13–904(A)(5) Was Not Applied Retroactively

¶5        Nixon contends that the trial court erred by applying A.R.S. § 13–904(A)(5) to him because doing so is a retroactive application in violation of A.R.S. § 1–244. We review de novo issues involving interpretation, application, and retroactivity of statutes. *State v. Carver*, 227 Ariz. 438, 441 ¶ 7, 258 P.3d 256, 259 (App. 2011). We presume that the statute in question is constitutional and Nixon has the burden to prove otherwise. *See Zuther v. State*, 199 Ariz. 104, 111 ¶ 23, 14 P.3d 295, 302 (2000).

¶6        The parties agree that A.R.S. § 13–904's express language does not state that it applies retroactively, and "[n]o statute is retroactive unless expressly declared therein." *See* A.R.S. § 1–244. The parties disagree, however, on whether the trial court retroactively applied A.R.S. § 13–904. A statute applies retroactively only when it "attaches new legal consequences to events completed before its enactment." *State v. Aguilar*, 218 Ariz. 25, 34 ¶ 33, 178 P.3d 497, 506 (App. 2008).

¶7        Nixon argues that the "completed event" here is his 1987 conviction and that A.R.S. § 13–904(A)(5) adds a legal consequence to that completed event. The statute is not retroactive "simply because it may relate to antecedent facts," however. *See Aranda v. Indust. Comm'n of Ariz.*, 198 Ariz. 467, 472 ¶ 24, 11 P.3d 1006, 1011 (2000). Contrary to Nixon's argument, the statute does not change the consequences of Nixon's past acts. Instead, the statute relates to conditions that existed in 1994. That is, if a person was a convicted felon in 1994 whose civil rights had not yet been restored, then the right to possess a gun or firearm also would be suspended. Because Nixon was a convicted felon in 1994 and had yet to have his civil rights restored, his right to possess a gun or firearm also was suspended.

¶8        The State argues that this case is indistinguishable from *State v. Olvera*, 191 Ariz. 75, 952 P.2d 313 (App. 1997). In *Olvera*, a defendant on trial for being a prohibited possessor of a firearm who had been convicted in 1992 argued that A.R.S. § 13–904 did not suspend his right to possess firearms in 1992, and that applying A.R.S. § 13–904(A)(5) to him would be

an impermissible retroactive application of the statute. 191 Ariz. at 76, 952 P.2d at 314. We found that A.R.S. § 13–904(A)(5) was not retroactively applied to Olvera even though his conviction occurred before 1994 because its application was based on his status as a felon in 1994. *Id.* at 77, 952 P.2d at 315 ("The statutory change made him a felon whose right to possess a firearm was suspended."). The factual circumstances here are not distinguishable from *Olvera*. Both Olvera and Nixon were convicted before 1994 and had their right to possess a gun or firearm suspended by A.R.S. § 13–904(A)(5). Nixon counters that *Olvera* is distinguishable because it merely dealt with whether A.R.S. § 13–905(A)(5) was an ex post facto law. But *Olvera*'s analysis was not so limited. In *Olvera*, we not only held that the statute was not an ex post facto law, we also held that applying it to a person who had been convicted of a felony before 1994 was not an improper retroactive application. 191 Ariz. at 76, 952 P.2d at 314. The same analysis applies here. The only effect that the statute had on Nixon was to change his status as a felon to a prohibited possessor from 1994 onward. Thus, A.R.S. § 13–904(A)(5) prospectively applies to convicted felons who had yet to have their civil rights restored when it became effective, regardless whether the conviction occurred before or after its effective date.

### 2. The Right to Possess a Gun or Firearm Is Not Automatically Restored

¶9　　　Nixon next argues that the trial court erred by denying the restoration of his gun rights because they should have been automatically restored when he completed probation in 2002. For a first-time felony offender, civil rights are automatically restored when the term of probation is completed and all fines are paid. A.R.S. § 13–912(A). This statute expressly states, however, that "[t]his section does not apply to a person's right to possess weapons . . . unless the person applies to a court pursuant to § 13–905 or 13–906." A.R.S. § 13–912(B). Here, Nixon unnecessarily applied for the restoration of his civil rights in 2007 because those rights—except for his gun rights—were automatically restored in 2002. Nixon's right to possess a gun or firearm, however, was suspended in 1994 when the Arizona Legislature amended A.R.S. § 13–904 to add the right to possess a gun or firearm. *See supra* ¶ 7. Therefore, although Nixon's other civil rights were automatically restored in 2002, his gun rights were not. Nixon applied to have his gun rights restored in 2007 and 2016, which the trial court denied in both instances. Accordingly, Nixon's argument that his gun rights were automatically restored in 2002 is without merit.

¶10　　　Nixon further argues that the trial court erred by citing an incorrect statute in denying his restoration request. The trial court's

decision to restore civil rights, including gun rights, is reviewed for an abuse of discretion. *See* A.R.S. § 13–908 ("[T]he restoration of civil rights and the dismissal of the accusation or information under the provisions of this chapter shall be in the discretion of the superior court judge[.]"). The trial court denied Nixon's request to restore his gun rights and used the abbreviation "*Cf.*" in citing the statute that controls setting aside judgments of guilt. The abbreviation "*Cf.*" is used in a citation when "[the] authority supports a proposition different from the main proposition but sufficiently analogous to lend support. Literally, 'cf.' means 'compare.'" The Bluebook: A Uniform System of Citation Rule 1.2(a), at 59 (Columbia Law Review Ass'n et al. eds., 20th ed. 2015). The statute the trial court compared its decision to, A.R.S. § 13–907(E)(4), states that a person convicted of an offense where the victim is a minor under 15 years old is ineligible to have his or her judgment of guilt set aside. That the trial court compared the discretionary decision to restore gun rights with a different section that referenced Nixon's specific conviction does not demonstrate an abuse of discretion. The trial court apparently noted the separate statute to show the seriousness of Nixon's conviction, not as authority to deny the restoration request. Thus, the trial court was correct in noting that it had the discretion to deny Nixon's request for gun rights and did not err by merely referencing another statute.

## CONCLUSION

¶11        For the foregoing reasons, we affirm.

